IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' UNION ) | |
| LOCAL #441 HEALTH and WELFARE ) | |
| FUND, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0191-WS-M |
| ) | |
| ACE FABRICATION, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (doc. 22) as it relates to defendant Ace Fabrication, Inc. That defendant has recently represented to the Court that it "is an insolvent corporation which has ceased doing business altogether," and that it "takes no position and alleges no defenses to the Plaintiff's pending Motion for Summary Judgment." (Doc. 29, at ¶¶ 1, 3.) The Motion is now ripe for disposition as to Ace Fabrication.[1]

**I.     Background.**

This action arises from an employer's nonpayment of required contributions to its unionized employees' health and welfare plan and its failure to remit payroll deductions to the union. In particular, a collection of plaintiffs including Sheet Metal Workers International

---

[1] Plaintiffs also brought this action, and their Rule 56 Motion, against a pair of individual defendants, to-wit: William F. Stewart, III, and Robin C. Stewart, alleging that they had signed an agreement and promissory note, as well as a personal guarantee, promising to make certain payments to plaintiffs. By Order (doc. 28) entered on November 2, 2011, the undersigned stayed plaintiffs' claims against the individual defendants pursuant to 11 U.S.C. § 362(a)(1). That automatic stay in bankruptcy remains in place as to those defendants. Despite an opportunity to do so, no party asked that the bankruptcy stay as to the Stewarts should be extended to Ace Fabrication; therefore, this action has proceeded with respect to that defendant. Accordingly, this summary judgment order is confined to plaintiffs' claims against Ace Fabrication, and neither reaches nor expresses any opinion concerning the merits of plaintiffs' claims against the Stewarts.

Association Local Union #441 ("Local 441"), Sheet Metal Workers Local 441 Health and Welfare Fund (the "Fund"), and various trustees of the Fund filed suit against Ace Fabrication, Inc. and a pair of other defendants on April 20, 2011.  The Complaint (doc. 1) alleges claims against Ace Fabrication for violation of 29 U.S.C. § 1145, based on its failure to make certain contributions to the Fund since March 2010, and for violation of 29 U.S.C. § 185(a), based on its failure to remit certain working assessments to Local 441 after deducting them from its employees' wages.

On summary judgment, plaintiffs proffer the following evidence in support of their claims against Ace Fabrication:[2]  At all relevant times, Ace Fabrication was a contributing employer to the Fund, and was also bound by a collective bargaining agreement (the "CBA") into which it had entered with Local 441.  (Payne Decl. (doc. 22-3), at ¶ 3.)  Under the terms of the CBA, certain of Ace Fabrication's employees were represented by Local 441, and Ace Fabrication was required to make periodic contributions to the Fund on behalf of those employees.  (*Id.*, ¶ 6.)[3]  The CBA also obligated Ace Fabrication to make certain working assessment deductions from its employees' wages, and to remit those funds to Local 441.  (*Id.*)[4]

---

[2]  The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party, resolving all reasonable doubts about the facts in favor of the non-movant.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, Ace Fabrication's evidence (had it elected to present any) would be taken as true and all justifiable inferences from the record are drawn in its favor.

[3]  In particular, the CBA included a provision stating that Ace Fabrication "shall pay $4.37 per hour into Health & Welfare Fund for each hour work [*sic*] by covered employees up to a maximum of Eighteen Hundred (1800) hours each calendar year."  (Payne Decl., Exh. 1, at Article VI, § 5.)  That section further provided that Ace Fabrication's contributions "shall be paid directly to the appropriate Plan."  (*Id.*)  Pursuant to the CBA, such contributions were due "not later than the 10th of the month for hours worked during the preceding month and if not paid by the 20th of the month shall be considered delinquent."  (*Id.*)

[4]  In that respect, the CBA contained language pursuant to which Ace Fabrication agreed "to honor working assessment deduction authorizations from its employees who have been referred for employment by" Local 441, and that such "assessment shall be deducted weekly by the Employer, who shall remit same to" Local 441.  (Payne Decl., Exh. 1, at Article V, § 3.)

Notwithstanding these unambiguous contractual responsibilities, the record shows that for a period of several months, Ace Fabrication did not make the required payments to the Fund, nor did it remit the requisite working assessment deductions to Local 441. Specifically, plaintiffs' evidence is that Ace Fabrication did not remit payment to the Fund for contributions owed in the months of April 2010, May 2010, January 2011, and March 2011, and that it only made partial payments for the months of February 2010 and February 2011. (Payne Decl., ¶ 7.) Plaintiff further shows that Ace Fabrication deducted working assessments from its employees' wages during the months of May 2010 and July 2010, as well as for the months of September 2010 through March 2011, but that it failed to remit those deductions to Local 441 as required under the CBA. (Payne Decl., ¶ 9.)

For its part, Ace Fabrication has opted not to challenge any of these facts. Even though the record is evaluated in the light most favorable to the non-movant for summary judgment purposes, none of the above facts are controverted. Defendant has identified no factual disputes as to any of the above matters; therefore, the Court accepts as true for summary judgment purposes that Ace Fabrication was obligated to pay contributions to the Fund during the subject time period, that it withheld working assessment deductions from employees that it had agreed to remit to the Union during the subject time period, and that it failed to make such contributions and to remit such assessments during the specified months.

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

As noted *supra*, Ace Fabrication did not submit any written opposition to plaintiffs' Motion for Summary Judgment. "Summary judgment is not automatically granted by virtue of a non-movant's silence." *Williams v. Aircraft Workers Worldwide, Inc.*, --- F. Supp.2d ----, 2011 WL 2111992, *3 (S.D. Ala. May 24, 2011). "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even when there is a complete failure to respond to the motion"). That said, a court is not obligated to read minds and cannot construct arguments or theories that a party has failed to raise.[5] As such, Ace Fabrication's decision not to proffer argument, evidence or authority in response to plaintiffs' Rule 56 Motion is at its peril.

**III.   Analysis.**

   *A.   Ace Fabrication Breached its Obligations under ERISA and the CBA.*

The summary judgment record unambiguously establishes that Ace Fabrication failed to make two categories of required payments during parts of 2010 and 2011. In particular,

---

[5] *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument [he] chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

plaintiffs have demonstrated that Ace Fabrication sometimes neither paid monthly contributions to the Fund nor remitted working assessment deductions to the Union, despite a clear contractual obligation to do so via the terms of the underlying CBA.

                1.      *Unpaid Contributions to the Fund (Count I).*

The relevant section of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Failure to make agreed-upon contributions is a violation of ERISA, which is actionable under the civil enforcement provisions of 29 U.S.C. § 1132. *See Xaros v. U.S. Fidelity and Guar. Co.*, 820 F.2d 1176, 1178 (11th Cir. 1987) ("Section 1132 creates a federal claim to enforce the obligation of employers imposed by section 1145."). Multiemployer plans and trustees are proper plaintiffs to bring such claims against the employer.[6]

Here, the summary judgment record confirms that Ace Fabrication was obligated by the terms of the CBA to make monthly contributions to the Fund in the amount of $4.37 per hour worked by each covered employee up to a maximum of 1,800 hours per year; that Ace Fabrication failed to remit such payments to the Fund during portions of 2010 and 2011; and that plaintiffs are proper plaintiffs to bring this ERISA claim against Ace Fabrication. As such, plaintiffs have shown that Ace Fabrication is in violation of § 1145, thereby entitling them to the

---

      [6]      *See, e.g., Bakery and Confectionery Union and Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) ("In a collection action based on section [1145], a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents."); *International Painters and Allied Trades Industry Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430 (D.D.C. 2010) (awarding default judgment to union pension fund and fiduciary against employer on § 1145 claim that employer had failed timely to pay contributions to funds); *Mo-Kan Iron Workers Pension Fund v. Challenger Fence Co.*, 426 F. Supp.2d 1001, 1006 (W.D. Mo. 2006) ("trust funds may directly enforce this obligation by a court action"); *Wisconsin UFCW Unions & Employers Health Plan v. Woodman's Food Market, Inc.*, 348 F. Supp.2d 1005, 1008 (E.D. Wis. 2004) ("A multi-employer plan may enforce as written the contribution requirements found in a collective bargaining agreement.") (citation and internal quotation marks omitted); *Seipel v. MacHill Const. Services, LLC*, 2009 WL 82364 (D. Minn. Jan. 9, 2009) (entering default judgment in favor of trustees and fiduciaries of multiemployer plans against employer on unpaid contributions).

remedies prescribed by § 1132.  Plaintiffs' Motion for Summary Judgment is therefore **granted** as to the ERISA cause of action set forth in Count I of the Complaint.

        2.     *Unremitted Working Assessment Deductions to Local 441 (Count II).*

The same outcome obtains as to Count II of the Complaint, wherein plaintiffs sue Ace Fabrication for violation of 29 U.S.C. § 185(a) based on its breach of its promise in the CBA to honor working assessment deduction authorizations, and to remit said deductions to Local 441. Section 185 authorizes unions to file suits against employers for breach of a collective bargaining agreement.[7]  The uncontroverted evidence in the record establishes that the applicable CBA executed by Ace Fabrication and Local 441 obligated Ace Fabrication to honor working assessment deduction authorizations from its employees, and to remit such weekly deductions to Local 441; and that Ace Fabrication failed to do so at times during 2010 and 2011.  Based on this showing, plaintiffs have met their burden of showing violation of the CBA by Ace Fabrication, which is actionable under § 185(a).  Accordingly, plaintiffs' Motion for Summary Judgment is likewise **granted** as to the cause of action set forth in Count II.

   **B.**    *Damages.*

The sole remaining question as to Ace Fabrication is the amount of damages to which plaintiffs are entitled.  They also seek summary judgment on this issue, and present undisputed facts supporting their request.

        1.     *Damages on ERISA Cause of Action.*

The damages award on plaintiffs' § 1145 claim is governed by 29 U.S.C. § 1132(g)(2), which provides that when a plan is awarded judgment on a § 1145 cause of action, "the court shall award the plan – (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated

---

[7] *See, e.g., Woodell v. International Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 98, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) (recognizing that § 185 allows suits "for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce"); *Office & Professional Employees Int'l Union, Local 2 v. F.D.I.C.*, 962 F.2d 63 (D.C. Cir. 1992) (under § 185, "when a claim derives from a collective bargaining agreement … the labor organization is *an* appropriate party (although not the *only* appropriate party) to vindicate employees' rights"); *Lynchburg Foundry Co. v. United Steelworkers of America, AFL-CIO*, 409 F. Supp. 773, 775 (W.D. Va. 1976) ("When a union and an employer differ over the existence of the rights of employees established by a collective bargaining agreement, then a cognizable cause of action [under § 185] appears to exist.").

damages provided for under the plan …, (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." *Id.* Where the plan prevails on a § 1145 claim, "award of these damages is mandatory, so long as: (1) the employer is delinquent at the time of the action; (2) the Court enters judgment against the employer; and (3) the plan provides for the award." *Trustees of Southern California IBEW-NECA Pension Plan v. Jam Fire Protection*, 718 F. Supp.2d 1176, 1185 (C.D. Cal. 2009); *see also Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp.2d 130, 154 (N.D.N.Y. 2003) ("the five components of an award under Section 1132(g)(2) are mandatory"). All of these conditions are satisfied here. Thus, it is appropriate to examine plaintiffs' evidence on each category of § 1132(g)(2) damages.

First, plaintiffs are entitled to recover the unpaid contributions themselves. Plaintiffs' evidence quantifying these contributions includes Local 441 official Robert Payne's averment that Ace Fabrication made no payments to the Fund for the months of April 2010, May 2010, January 2011, and March 2011, and only partial payments for February 2010 and February 2011. (Payne Decl., ¶ 7.) Ace Fabrication has not disputed this allegation, and no evidence in the record would admit of a contrary inference. Accompanying the Payne Declaration are Uniform Fringe Benefit Reports documenting the unpaid amounts to the Fund for the months of April 2010 ($25,169.03), May 2010 ($22,380.97), January 2011 ($11,891.86), and March 2011 ($16,132.95). (Payne Decl., at Exh. 3.) Plaintiffs have also submitted a ledger from the Plan Manager documenting that the unpaid portions of Fund contributions owed by Ace Fabrication for February 2010 totaled $11,385.98 and those for February 2011 totaled $10,898.71. (*Id.*) Again, Ace Fabrication has not disputed the magnitude of these unpaid amounts, and there is no evidence that other or lesser amounts were unpaid in the months at issue. Accordingly, plaintiffs have properly shown that they are entitled to an award of unpaid contributions to the Fund in the amount of **$97,859.50** (or $25,169.03 + $22,380.97 + $11,891.86 + $16,132.95 + $11,385.98 + $10,898.71). That amount is properly awarded as damages to plaintiffs pursuant to 29 U.S.C. § 1132(g)(2)(A).

The next category of mandatory damages under § 1132(g)(2) is interest on the unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The Fund's plan documents in the record provide that interest on

delinquent contributions accrues at the rate of 12% per annum. (Payne Decl., Exh. 2, at § 6.04(2) (indicating that employer is liable for "Interest on the unpaid Employer Contribution at the rate of 12% per annum from the date such payment was due"). The undersigned's calculations show that these interest amounts are properly calculated at **$15,937.99** in the aggregate for the delinquent Fund contributions identified above.[8]

The third type of damages available under § 1132(g)(2) is "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii). The Fund plan documents assess liquidated damages "in an amount equal to the greater of the total interest due on the unpaid Employer Contribution or 20% of the total unpaid Employer Contribution." Payne Decl., Exh. 2, at § 6.04(3). Because 20% of the unpaid contributions in this case exceeds the total interest due, liquidated damages will be awarded against Ace Fabrication in the amount of **$19,571.90** (or $97,859.50 x 0.2).

The fourth type of damages due under § 1132(g)(2) consists of reasonable attorney's fees and costs of the action. *See, e.g., McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 (4th Cir. 1991) ("when a fund is successful in a suit to recover delinquent contributions attorneys fees are mandatory not discretionary"); *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401-02 (6th Cir. 1995) (utilizing traditional "lodestar" approach in computing reasonable attorney's fees in § 1145 action, and placing burden on plaintiff of presenting evidence showing hours worked and rates claimed). Plaintiffs' evidence is that their accrued attorneys' fees in this matter total a very modest $2,150.00, based on 4.6 hours billed at a rate of $175.00 and 12.6 hours billed at a rate of $125.00, and that they have incurred

---

[8] The arithmetic behind those calculations is as follows: (i) for February 2010 contributions, the interest owed is $2,541.73 ($11,385.98 x 0.12 x 679 days / 365 days); (ii) for April 2010 contributions, the interest owed is $5,113.80 ($25,169.03 x 0.12 x 618 days / 365 days); (iii) for May 2010 contributions, the interest owed is $4,319.22 ($22,380.97 x 0.12 x 587 days / 365 days); (iv) for January 2011 contributions, the interest owed is $1,337.10 ($11,891.86 x 0.12 x 342 days / 365 days); (v) for February 2011 contributions, the interest owed is $1,125.11 ($10,898.71 x 0.12 x 314 days / 365 days); and (vi) for March 2011 contributions, the interest owed is $1,501.03 ($16,132.95 x 0.12 x 283 days / 365 days). For each month, interest was calculated as beginning to accrue on the 10th day of the following month (inasmuch as that was the payment due date established for Fund contributions by Article VI, § 5 of the CBA) and ceasing on the date of entry of this Order and Judgment.

costs of $350.00 (the filing fee for commencing civil litigation in this District Court). (Walker Decl. (doc. 22-9), at ¶ 7.) After careful review of plaintiffs' record showing, the undersigned concludes that both the hourly rates and hours billed are manifestly reasonable under the circumstances.[9] The Court further finds that plaintiffs reasonably incurred the attorneys' fees and costs in litigating this action. Accordingly, plaintiffs will be awarded reasonable attorney's fees of **$2,150.00** and costs of **$350.00** pursuant to § 1132(g)(2)(D).

The fifth and final category of damages under § 1132(g)(2) is "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Plaintiffs' Motion for Summary Judgment does not request any such other relief, and none will be awarded under this "catch-all" residual provision.

In light of the foregoing, the Court finds that plaintiffs have proven damages on their § 1145 cause of action equal to the sum of all bold-type figures set forth in this subsection, for a total of **$135,869.39.**

### 2. Damages on Breach of CBA Cause of Action.

With respect to Count II, the claim for breach of collective bargaining agreement, Local 441 may be awarded compensatory damages for Ace Fabrication's breach, which in this case would consist of the deductions that Ace Fabrication failed to remit to the union. *See generally Contempo Design, Inc. v. Chicago and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 554 (7th Cir. 2000) ("Under § 301, the measure of damages recoverable for a breach of contract is the actual loss sustained as the direct result of the breach."); *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Const., Inc.*, 521 F. Supp.2d 316, 318 (S.D.N.Y. 2007) (awarding compensatory damages for benefit contributions that employer was obliged to make to

---

[9] Ordinarily, the better practice is for counsel to submit detailed billing invoices to support a requested fee award. In this case, however, such exhibits are not necessary because (i) the amounts requested are modest by any standard; (ii) the expenditure of a mere 17 hours of attorney time in drafting a federal complaint, serving process, reviewing pleadings, participating in the Rule 26(f) planning meeting and report preparation, preparing initial disclosures, and preparing/filing a Rule 56 motion is so economical as to be inherently reasonable under the circumstances of this case; and (iii) the Walker Declaration adequately quantifies the total number of hours billed and the billing rates charged, and breaks down the number of hours billed at each rate. On such a record, no serious challenge as to the reasonableness of the requested attorney's fees could possibly be mounted, and no purpose would be served by forcing plaintiffs' counsel to submit itemized billing statements to document reasonableness that is already clear.

union funds on behalf of employees). Thus, to the extent that Local 441 proves such damages, it is entitled to an award in the amount of the wage deductions that Ace Fabrication was contractually obligated to pay to the union, but which it failed to remit. The record before the Court adequately establishes that the amount of such unremitted deductions is **$10,127.20**. (*See* Payne Decl., ¶ 9 & Exh. 3 at 2.)[10] Therefore, those amounts are properly awarded as damages on the § 185 cause of action.

## IV.   Conclusion.

For all of the foregoing reasons and because there are no genuine issues of material fact remaining for trial, Plaintiffs' Motion for Summary Judgment (doc. 22) is **granted** as to both of plaintiffs' claims against defendant Ace Fabrication, Inc. Judgment will be entered in plaintiffs' favor, and against Ace Fabrication, on Counts I and II, in the total amount of **$145,996.59**, inclusive of unpaid contributions to the Fund, interest through today's date, liquidated damages, reasonable attorney's fees and costs, and unremitted work authorization deductions from employee wages.

The Motion for Summary Judgment remains pending as to defendants William F. Stewart, III, and Robin C. Stewart, subject to the automatic stay in bankruptcy.

DONE and ORDERED this 18th day of January, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10]   The breakdown of these unremitted amounts on a monthly basis is as follows: May 2010 ($1,155.00), July 2010 ($1,144.03), September 2010 ($1,159.52), October 2010 ($1,155.00), November 2010 ($1,033.95), December 2010 ($1,010.18), January 2011 ($1,159.52), February 2011 ($1,155.00), and March 2011 ($1,155.00). (*Id.*)